CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

DEC 14 2007

JOHN F. CORCORAN, CLERK
BY: ~~~~~~
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| **LIBBY S. GODWIN,** | ) | Case No. 5:07cv00006 |
|  | ) |  |
| *Plaintiff* | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
|  | ) |  |
| **MICHAEL J. ASTRUE,** [1] | ) | By:  Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
|  | ) |  |
| *Defendant* | ) |  |
|  | ) |  |

The plaintiff, Libby S. Godwin, brings this action pursuant to 42 U.S.C. § 1383(c)(3) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for disability insurance benefits under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. 405(g).

The Commissioner's Answer was filed on May 22, 2007 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered seven days later, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, and 28 U.S.C. § 405(g) he is substituted, in his official capacity, for Jo Anne B. Barnhart, the former Commissioner.

Addressing the reasons why she believes the final decision of the Commissioner ought to be either reversed or remanded, the plaintiff's memorandum of points and authorities was filed on June 19, 2007. Therein, she contends that the administrative law judge ("ALJ") erred in concluding that she retained the functional ability to perform a range of sedentary work activity and in failing to give the requisite decisional weight to the medical opinions and conclusions of her treating physicians. No written request was made for oral argument. [2] On August 3, 2007, the Commissioner filed his Motion for Summary Judgment and supporting memorandum. After making a thorough review of the administrative record, the following report and recommended disposition are submitted.

## I.      Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement to a period of disability insurance benefits pursuant to the Act. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (*quoting Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court

---

[2] Paragraph 2 of the court's Standing Order No. 2005-2 directs that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time his or her brief is filed.

2

should not] undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.      Administrative History

The record shows that the plaintiff protectively filed her application for a period of disability insurance benefits on or about June 30, 2004 claiming a February 25, 2004 onset date. (R.62,130). After her application was denied, both initially and on reconsideration, an administrative hearing was held on February 9, 2006 before an ALJ. (R.21,31-37,40-46,50-61,422-441). Although the plaintiff arrived somewhat late for the hearing, she testified and was represented during the entire hearing by counsel. (R.26,48-49,422-441). Utilizing the agency's standard five-step inquiry, [3] the plaintiff's claim was subsequently denied by written administrative decision on May 31, 2006. (R.19-30).

---

[3] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3$^d$ 171, 177 (4th Cir. 2001). It begins with the question of whether the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry requires a determination of whether, based upon the medical evidence, the individual has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d). If so, the person is disabled; if not, step-four is a consideration of whether the person's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the individual from performing other work. 20 C.F.R. § 404.1520(f).

3

At the first two decisional steps, the ALJ found that the plaintiff had not engaged in substantial gainful work activity at any decisionally relevant time and that she in fact had "severe" impairments. (R.17,23). In the view of the ALJ, both the plaintiff's fibrous tissue pain syndrome [4] and her depression were such that each could be expected to interfere to some degree with her ability to work (R.23-24). *See Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984). Although the ALJ specifically noted that the medical record failed to establish the criteria necessary to meet the American College of Rheumatology's definition of fibromyalgia, he concluded that the "overall longitudinal record [was] generally consistent" with this diagnosis. (R.23-24).

At step-three, the ALJ found that the plaintiff had exhibited no condition, either individually or in combination, which satisfied the requirements of a medical listing. As part of this step-three finding, the ALJ noted that fibromyalgia was not one of the agency's listed impairments and that the plaintiff's depression was insufficiently severe to meet any one of Listing 12.04's several criteria, (R24-25).

After next determining that the plaintiff was functionally unable to perform any of her past relevant work, the ALJ concluded at step-five that the plaintiff retained both the physical capacity and the mental ability to meet the demands of a range of sedentary work [5] and that she was, therefore, not disabled within the meaning of the Act. (R.25-30).

---

[4] As the ALJ noted in his decision, this condition is variously known as myofascial pain syndrome, fibromysitis, fibrositis, and fibromyalgia. (R.23).

[5] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a job is sedentary if walking and standing are required on occasion. *See* 20 C.F.R. § 404.1567(a).

4

After issuance of this unfavorable decision, the plaintiff made a timely request for Appeals Council review. (R.11,15-18,371-419). Her request was granted, and after review the ALJ's decision was affirmed.. (R.8-10). It now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III.    Facts

The plaintiff was born in 1967 and was thirty-eight years of age [6] at the time of the administrative hearing. (R29,424,428). She completed the tenth grade in school, and her past relevant work included jobs as a cashier, a production worker in a sewing facility, and a production worker in a bindery. (R.87-94,135,424-426). As performed, her job in the bindery was heavy and unskilled, and her sewing and cashiering jobs were light and unskilled. (R.424-426).

Her medical records document a long history of conservative treatment for persistent subjective pain complaints and intermittent episodes of anxiety and depression; however, they also present little objective basis for these chronic pain complaints. For example, in response to her complaints of neck pain radiating into her shoulder and mid-back, diagnostic radiographic studies in February 2001 at Rockingham Memorial Hospital ("RMH") failed to disclose any cervical or spinal cord abnormality. (R.272-274).

---

[6] At this age the plaintiff is classified as a " younger person," and pursuant to the agency's regulations her age is generally considered not to impact significantly her vocational adaptability. 20 C.F.R. § 1563(c).

5

The 2002 office records of Dr. Danny Perry, the plaintiff's primary care physician, record the plaintiff's subjective complaints of aching "all over" and chronic fatigue. (R.178-179). Although he noted her "multiple" tender points on palpitation, he also noted the absence of any muscle weakness or atrophy. (*Id.*). In the same note, Dr. Perry also recorded the plaintiff's denial of any depression, anxiety or other mental health symptoms. (*Id.*). When seen by Dr. Perry on two other occasions during the same year, the plaintiff similarly presented with pain and fatigue complaints and with no mental health symptoms. (R.166-177).

During 2003, in addition to treatment for transient problems with sinusitis, bronchitis, tendinitis and a minor fight-related injury (R.161-165, 265-269,276-277), the plaintiff sought treatment on one occasion with complaints of fibrocitic pain and depression. (R.153). On that occasion she was seen by Dr. Glenn Deputy, who continued thereafter as the plaintiff's treating neurologist.

Claiming that she was in too much pain to work and "seeking short-term disability," beginning in February 2004 the plaintiff's medical records show a marked increase in the number of office visits to health care providers for a myriad of pain complaints and intermittent episodes of depression. (R.141-144,146-152,154-160,180-183,241-264,275,340-348). These records document a wide range of pain complaints, including *inter alia* severe back pain radiating into her hips (R.152), back and neck pains (R.151), severe neck pain, anxiety and depression (R.149), intermittent neck pain (R.257), neck and head pains (R.249-250), arm, neck, leg and back pains with right lower

6

extremity radiculopathy (R.158), mid and low back pains caused by a falling PVC pole (R.156), and continuing low back pain and anxiety (R.340).

In addition, however, they record multiple negative diagnostic studies and only routine conservative care. (*Id.*). An MRI, a CT scan, and X-rays in March 2004 at RMH disclosed no significant cervical, joint or sinus abnormality which might account for her pain and headache complaints (R.260-264). Likewise, lumbar X-rays at RMH in September of the same year disclosed no evidence of any fracture, subluxation or significant degenerative changes. (R.242-243, 275,346). In addition the medical record for 2004 also demonstrates an absence of any objective physiological basis for this myriad of pain complaints.

During 2005 and 2006 the plaintiff's medical records repeat the same pattern of diffuse subjective pain-related complaints, conservative treatment, intermittent episodes of depression and/or anxiety, and the absence of any objective basis for her pain complaints (R.140,184,207-215,286-302,304-308,349-356,357-364,379-419).

In general, both before and after her alleged disability onset date the plaintiff's pain complaints were managed conservatively with medications and periodic physical therapy. (*e.g.*, R.142-153,180-184,341,344,216-240). No suggestion of inpatient care or surgical intervention at any time appears from the record to have been medically indicated.

7

The plaintiff was similarly treated with psychotropic medications for her transient symptoms of depression and/or anxiety. (R.142-144,153,159,207-215; *see also* R.350,353,355,358). These symptoms required no hospitalizations and only a limited period of outpatient treatment by Dr. Michael Hoffman during which time the plaintiff's mental status improved significantly. (R.207-208,213,347).

Based on three separate reviews of the medical record, functional assessments of the plaintiff's physical and mental conditions were made by state agency consultants. In connection with the mental assessment, the psychologist concluded in January 2005 that the plaintiff's depression and anxiety constituted only a mild to moderate limitation and that she was capable of meeting the demands of a range of simple routine non-stressful work activity. (R.191-193; *see also* R.194-206). In January and again in May 2005, state agency physicians concluded that the medical record did not evidence "disability" within the meaning of the Act and that the plaintiff retained the physical ability to perform work at a light exertional level. (R.185-190, 278-284).

A detailed evaluation in June 2005 of the plaintiff's functional abilities at RMH Rehab Services (R.309-331) objectively demonstrated, however, that her ability to perform work-related activities was somewhat more limited and that she was able only to meet the less physically demanding requirements of sedentary work on a regular and sustained basis. (R.310).

Although this extensive evaluation was undertaken at the request of Dr. Deputy, the plaintiff's treating neurologist, he subsequently opined in a physical capacities questionnaire that the

8

plaintiff's chronic spinal pain and attendant emotional issues were debilitating to a degree that she was physically unable to sit, stand, and/or work a full eight-hour day. (R.304-308,379-82). Likewise, in a similar functional assessment questionnaire completed by her primary care physician in early February 2006, Dr. Perry opined that the plaintiff's chronic pain and depression would frequently interfere with her attention and concentration and that she would not be able to tolerate even a low stress job. (R.334-338,365-369,374-378).

During the same month at her administrative hearing, the plaintiff testified that she had not worked since February 25, 2004 due to "a lot" of back and neck pain, sore and achy legs with attendant periodic numbness, hand pain and stiffness, sleep difficulties, and emotional problems. (R.427-431,434-436). She stated that these were "daily" problems which "progressively got worse" over the preceding two years. (R.29-430). Her pain and physical problems, she testified, made it difficult for her to drive or walk any significant distance, use her hand to grip things, use her arms and shoulders to lift or carry things, to stand for longer than about ten minutes at a time, and to sit for longer than about one hour without standing and moving. (R.431-433). In the plaintiff's view, her emotional reaction to things had also worsened over the preceding one and one-half years. (R.430).

Submitted in letter form after the hearing, Jeannie Garber represented that the plaintiff had been a student in her Fall 2005 computer class at Massanutten Technical Center and that she had observed the plaintiff's "evident" discomfort sitting through a two-hour class and on one occasion having "broke[n] down in tears." (R.333,370).

9

Vocational testimony at the hearing was given by Barry Hensley. In addition to testifying concerning the plaintiff's vocational profile and relevant work history, Dr. Hensley gave employability testimony in response to several hypothetical questions.

Asked to assume a hypothetical individual with the plaintiff's vocational profile and with the exertional limitations detailed in the RMH Rehab Services functional assessment, Dr. Hensley testified that such an individual could perform a number of jobs in the national economy, and he cited work as a production inspector or as a mechanical assembler to be representative examples of the work such an individual could perform. (R.436-438). If further limited to simple decision-making and the carrying-out of simple instructions because of her emotional impairments, it was Dr. Hensley's further opinion that such an individual would remain able to perform these types of work on a regular and sustained basis. (R.438-439). In answer to a third hypothetical question posed by plaintiff's counsel, Dr. Hensley testified that he could identify no work existing in significant numbers in the national economy which could be performed by an individual with the limitations described by Dr. Perry (R.334-337), the plaintiff's primary care physician. (R.439-440).

## IV.    Analysis

At its core, the basis of the plaintiff's appeal to this court is her contention that the ALJ was decisionally obligated to give controlling weight to the treating source opinions of Drs. Perry and Deputy concerning the severity of her condition and her attendant disabling limitations. Under the applicable agency regulation, 20 C.F.R. § 404.1527(d), however, the ALJ is obligated to give

10

controlling weight to a treating source's opinion only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. *Johnson v. Barnhart*, 434 F.2$^d$ 650, 654 n.5 (4th Cir. 2005). Moreover, an ALJ is never decisionally obligated to give controlling, or even enhanced, weight to treating source opinions concerning an individual's residual functional capacity. 20 C.F.R. § 404.1527(e); SSR 96-2p. *See United States v. Spaulding*, 293 U.S. 498, 506 (1935).

In the case now before the court, the ALJ chose to discount the assessments of Drs. Perry and Deputy because he found them to be inconsistent with the medical record and to be unsupported by the objective medical evidence of record. (R28). Based on a review of the medical record, this finding of the ALJ is supported by substantial evidence.

Both in his decision and in his hypothetical questions posed to the vocational witness, the ALJ placed significant reliance on the detailed and thorough functional capacity evaluation of RMH Rehab Services. This June 2005 assessment provided the ALJ with objective and well-documented evidence of the plaintiff's capacity to perform sedentary work activity. Likewise, it provided the ALJ with a fully adequate decisional basis to find that the plaintiff retained the functional ability to perform this level of work activity on a regular "8-hour day" basis (R.310).

The ALJ's determination that the plaintiff retained the physical ability to do sedentary work is also supported by the medical record which evidences her treatment primarily for subjective complaints of muscle pain and discomfort. (*E.g.*, R.144-155,158-159,161,173,178,180-184,341,351,

11

354,356-357). Without question, such impairments can, and often do, limit a individual's physical capacity; however, the plaintiff's history of treatment for these complaints does not suggest her total disability in any decisionally compelling way.

For example, her muscle tenderness was found generally to be localized in the spinal area. (R.140,142,144,149,157,159,182,242,289-290,351,354,356-357,359). She was observed to have a normal gait and to walk fairly well. (R.182,347,357). She evidenced no muscle atrophy or loss of muscle strength. (R.157,182,289,351). And she demonstrated no significant neurologic deficits. (R.155,157,159,182,290,351,354,356,359).

The medical evidence similarly supports the ALJ's conclusion (R.24-25) that the plaintiff's mental health issues represented only a mild to moderate restriction on her ability to perform work-related activities. Her depression and anxiety were treated with psychotropic medications and at no time required hospitalization. (R.142-144, 153,211). She required only a short period of outpatient psychiatric care by Dr. Michael Hoffman (R.207-215). And as demonstrated by the state agency psychologist's review of the record, the plaintiff's mental health limitations were not sufficient to prevent her from meeting the basic demands of work activity on a regular and sustained basis. (R.191-206).

As previously noted herein, the court's function in cases such as this is limited. The question is whether substantial evidence exists in the record to support the residual functional capacity finding of the ALJ, and this court lacks the authority to substitute its judgment for that of the Commissioner.

12

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *Id.* at 1456. Although he may not reject medical evidence for no reason or for the wrong reason, he may assign little or no weight to a medical opinion, even the opinion of a treating source, based on the factors listed in 20 C.F.R. § 404.1527(d). *See King v. Califano,* 615 F.2d 018, 1020 (4th Cir. 1980).

Fairly summarized, the ALJ analyzed all of the relevant evidence; he sufficiently explained his findings; he articulated his rationale for crediting and discounting the evidence, and his decision is based on substantial evidence. In affirming the final decision of the Commissioner, it is not suggested that the plaintiff either is or was, during the relevant time period, totally free of pain and discomfort. The record, however, simply fails to document the existence of any condition, or combination of conditions, which would be reasonably expected to result in her total disability within the meaning of the Act.

## V.    Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1.    The Commissioner's final decision considered adequately all of the evidence in this case;

2.    The Commissioner's final decision is supported by substantial evidence;

13

3.    The plaintiff's argument that the ALJ failed to give proper consideration and weight to Dr. Perry's medical opinion and evaluation is without merit;

4.    The plaintiff's argument that the ALJ failed to give proper consideration and weight to Dr. Deputy's medical opinion and evaluation is without merit;

5.    The ALJ properly considered the plaintiff's medical conditions and associated functional limitations;

6.    The ALJ properly considered the plaintiff's emotional, physical, and pain-related complaints;

7.    Substantial medical and activities evidence exists to support the ALJ's findings concerning the plaintiff's symptoms and functional limitations;

8.    Substantial evidence exists to support the ALJ's finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

9.    Substantial evidence exists to support the ALJ's finding that through the decision date the plaintiff retained the residual function capacity to perform a range of sedentary work activity;

10.   The plaintiff has not met her burden of proving disability; and

11.   The final decision of the Commissioner should be affirmed.


## VI.    Recommended Disposition


For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

14

The clerk is directed to transmit the record in this case immediately to the presiding United States District Judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII.    Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 14th day of December 2007.

_____s/  James G. Welsh_____
United States Magistrate Judge

Case 5:07-cv-00006-SGW-JGW   Document 16   Filed 12/14/07   Page 15 of 15   Pageid#: 76